# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**OLDENBURG GROUP INCORPORATED,**
        Plaintiff,

    v.                                                          Case No. 07C0285

**FRONTIER-KEMPER CONSTRUCTORS, INC.,**
        Defendant.

---

## DECISION AND ORDER

Plaintiff Oldenburg Group Incorporated ("OGI") brought this diversity action against defendant Frontier-Kemper Constructors, Inc. ("FKC"), claiming that defendant breached an agreement to indemnify plaintiff. On June 18, 2008, I granted OGI's motion for summary judgment. Before me now is the question of the amount of damages to which OGI is entitled.

## I. BACKGROUND

The events leading to the present lawsuit began when one of OGI's subsidiaries agreed to design and install a vertical conveyor belt system (the "VBS") for a mining company in White County, Illinois. Shortly after OGI began work on the VBS, OGI sold its rights and liabilities regarding the VBS project to FKC pursuant to an asset purchase agreement. The asset purchase agreement allocated all liability for any defect in the design of the VBS to FKC, and it included an indemnification provision requiring FKC to indemnify OGI from any liability arising out of such design. In 2005, the VBS malfunctioned, and the Illinois mining company sued FKC in Illinois state court, alleging that FKC was liable for the malfunction. Despite the indemnification provisions of the asset

purchase agreement, FKC impleaded OGI and argued that it was responsible for the malfunction.

OGI responded by filing the present lawsuit seeking to enforce the indemnification agreement. (The asset purchase agreement designates this District as the venue for a suit to enforce the agreement.) After some initial skirmishing relating to FKC's default and whether I should dismiss the case on abstention grounds, this case and the Illinois action proceeded on parallel tracks. When I granted OGI's motion for summary judgment and found that FKC had breached the asset purchase agreement, all claims against OGI in the Illinois litigation were dismissed.

Following my summary judgment decision, the parties submitted briefs and supporting affidavits regarding OGI's damages, which consist of the costs and reasonable attorneys' fees incurred by OGI as a result of FKC's breach. OGI seeks $357,553.67 in attorneys' fees and other expenses incurred in both the Illinois litigation and the present case. The total includes $215,210.19 for the services of Reinhart Boerner van Deuren S.C., the lead firm in the present case; $122,917.30 for the services of Sandberg, Phoenix & von Gontard P.C., the lead firm in the Illinois case; and $19,426.18 for expert consultants and other litigation expenses.

In making its initial request for an award of damages, OGI refused to allow FKC to review unredacted copies of its legal bills, claiming that they contained matters protected by the attorney-client privilege. FKC objected and demanded full, unredacted copies of the bills. I ruled that even if OGI's bills contained privileged materials, OGI was required to waive the privilege because OGI had placed its bills "at issue" in this litigation by seeking to recover attorneys' fees. See Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 731-32

(8th Cir. 2002); Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 484-87 (Fed. Cl. 2000).  OGI then provided its complete bills to FKC.

Having reviewed OGI's bills, FKC now argues that OGI is not entitled to recover all of its claimed legal fees and expenses because (1) under Michigan law (which the parties agree governs the issue), OGI is not entitled to recover the attorneys' fees it incurred in establishing its right to indemnification, and (2) much of the work performed by the Reinhart firm was duplicative of the work performed by the Sandberg firm.  I consider these arguments below.  Before doing so, however, I note that neither party has asked that I hold an evidentiary hearing or other proceedings before calculating the amount of damages.  Thus, I assume that the parties concede that I may resolve their dispute based on the affidavits and documentary evidence.

## II.  DISCUSSION

The indemnification provision of the asset purchase agreement provides:

> 7.  Indemnification by FKC.  Notwithstanding the closing, FKC agrees to indemnify, defend and hold [OGI] harmless from and against any and all damage, liability, loss, judgment, fine, penalty, cost, deficiency and expenses (including reasonable attorneys' fees) and also any other costs and expenses incident to proceedings or investigations or the defense or settlement of any claim arising out of, resulting from or relating to:
>
> . . . .
>
> (d) Any defect, error or problem arising from the design or design engineering on the White County Coal Contract.

(Asset Purchase Agreement § 7.)  In my summary judgment decision, I held that FKC breached this provision by impleading OGI into the Illinois litigation, which was an action asserting a "defect, error or problem" arising from the design on the White County Coal

3

Contract. Not only should FKC not have impleaded OGI into the Illinois action, FKC would have been required to defend and indemnify OGI had any other party brought OGI into the litigation. Thus, as damages, FKC is obligated to pay all costs and expenses, including reasonable attorneys' fees, incurred by OGI in defending any claims in the Illinois action.

In its demand for damages, however, OGI asks not only for the expenses it incurred while defending itself in Illinois, but also for the expenses it incurred in this court in establishing its right to indemnification. FKC objects to paying the expenses incurred by OGI in establishing its right to indemnification on the ground that Michigan law does not require an indemnitor to pay the fees incurred by the indemnitee in establishing its right to indemnification.

FKC has correctly stated the general rule in Michigan: unless the indemnity contract provides otherwise, the allowance of attorneys' fees is limited to the defense of the claim indemnified against and does not extend to the fees incurred in establishing the right to indemnification. Hayes v. Gen. Motors Corp., 308 N.W.2d 452, 458 (Mich. Ct. App. 1981); see also Harbenski v. Upper Peninsula Power Co., 325 N.W.2d 785, 792-93 (Mich. Ct. App. 1982) (in contractual indemnity claim, trial court was required to apportion attorneys' fees among indemnification action and defense of claim indemnified against). Thus, unless the asset purchase agreement provides that OGI can recover the fees that it incurred in establishing FKC's breach, OGI is limited to recovering the fees that it incurred in defending the Illinois action.

OGI argues that the asset purchase agreement contains a provision requiring FKC to pay the fees that it incurred in both the indemnification action and the Illinois action. That provision is Section 7(b), which is part of the section of the asset purchase agreement

4

containing FKC's general indemnification obligations. (Section 7(d) is the subsection containing the indemnification provision requiring FKC to indemnify OGI for the Illinois action.) With Subsection (b) included, the indemnification provisions of the asset purchase agreement provide as follows:

> 7. <u>Indemnification by FKC.</u> Notwithstanding the closing, FKC agrees to indemnify, defend and hold [OGI] harmless from and against any and all damage, liability, loss, judgment, fine, penalty, cost, deficiency and expenses (including reasonable attorneys' fees) and also any other costs and expenses incident to proceedings or investigations or the defense or settlement of any claim arising out of, resulting from or relating to:
>
> . . . .
>
> (b) <u>Any failure of FKC to duly perform or satisfy the Assumed Liabilities or duly perform or observe any term, provision, covenant, agreement or responsibility to be performed or observed by FKC pursuant to this Agreement</u>; [and]
>
> . . . .
>
> (d) Any defect, error or problem arising from the design or design engineering on the White County Coal Contract.

(Asset Purchase Agreement § 7 (emphasis added).) OGI argues that Section 7(b) requires FKC to pay the fees and costs incurred by OGI in any suit against FKC for breach of the asset purchase agreement. Because the present action is such a suit, argues OGI, FKC must pay both the cost of the defense in the Illinois action and the cost of the present indemnification action.

The problem with OGI's argument is that Section 7(b) can be read two ways. First, it can be read broadly, allowing OGI to recover the losses (including attorneys' fees) that it incurred because of FKC's failure to perform its obligations under the asset purchase agreement as well as the costs and attorneys' fees that OGI incurred in establishing FKC's

breach in the first place. Second, it can be read narrowly, allowing OGI to recover the losses (including attorneys' fees) incurred because of the breach <u>but not also the costs and attorneys' fees that OGI incurred in establishing FKC's breach</u>. For instance, under Section 12 of the asset purchase agreement, FKC was required to perform all of OGI's obligations under certain contracts assumed by FKC as part of the asset sale. If FKC failed to perform one of those contracts, and the beneficiary of the contract sued OGI for performance, FKC would be liable under Section 7(b) to defend and indemnify OGI in the beneficiary's suit because the suit would have been the result of FKC's failure to perform its obligations under Section 12. However, Section 7(b) does not necessarily require that FKC <u>also</u> pay the attorneys' fees incurred by OGI in establishing that FKC had failed to perform its obligations under Section 12. Similarly, in the present case, although Section 7(d) requires FKC to pay the cost of OGI's defense in the Illinois action, Section 7(b) does not necessarily require FKC to pay the costs incurred by OGI in establishing that FKC had failed to perform its obligations under Section 7(d).

Because Section 7(b) is thus susceptible to two readings – one broad and one narrow – I must adopt the narrow reading unless there is clear evidence that the parties intended to adopt the broad reading. This is so because the rule in Michigan is that indemnification provisions are construed strictly against the party seeking indemnification. <u>See, e.g.</u>, <u>Triple E Produce Corp. v. Mastronardi Produce, Ltd.</u>, 530 N.W.2d 772, 776 (Mich. Ct. App. 1995); <u>MSI Constr. Managers, Inc. v. Corvo Iron Works, Inc.</u>, 527 N.W.2d 79, 81 (Mich. Ct. App. 1995); <u>Reed v. St. Clair Rubber Co.</u>, 324 N.W.2d 512, 515 (Mich. Ct. App. 1982). Here, there is no evidence that the parties intended the broader reading. On the contrary, because the usual "American" rule is that each party pays its own

6

attorneys' fees in suits for breach of contract, and because the agreement selects Michigan law (under which an indemnitee is normally not entitled to recover the costs of establishing its right to indemnification), it is very likely that had the parties intended that a prevailing party recover its attorneys' fees in a suit for breach of the asset purchase agreement, they would have used much clearer language. Indeed, stating that one party agrees to "indemnify, defend and hold [the other party] harmless" from certain losses is an awkward way of stating that one party agrees to pay the other's attorneys' fees in a suit between them involving breach of contract. Had the parties truly intended this result, they would have used language such as that used by the parties in <u>Sentry Insurance v. Lardner Elevator Co.</u>, 395 N.W.2d 31, 35 (Mich. Ct. App. 1986):

> 14. <u>Attorney Fees</u>. In the event it becomes necessary for Contractor to enforce this Subcontract to secure the performance thereof or assert any claim against Subcontractor, Subcontractor agrees to pay a reasonable attorney fee and any costs incurred hereby.

(Internal quotation marks omitted). Accordingly, OGI is limited to recovering the costs and attorneys' fees that it incurred in the Illinois action.

The next step in calculating OGI's damages would be to determine which of OGI's attorneys' fees are attributable to the Illinois action and which are attributable to the present action, and to award OGI only the former. FKC argues that $49,690.50 of the total fee request is attributable to the indemnification action. OGI argues that FKC's apportionment is arbitrary. However, OGI has not offered its own apportionment. It has instead wagered its entire case on the court accepting its argument that Section 7(b) entitled it to recover both the fees incurred in the Illinois action and the fees incurred in the present action. (<u>See</u> Docket #72, at p. 12. (asserting that FKC's apportionment lacks

7

support, but offering no alternative apportionment, arguing instead that apportionment is "irrelevant").) Having thus forfeited its opportunity to offer its own apportionment, OGI is bound by FKC's apportionment, which is essentially a concession that all of OGI's requested damages less $49,690.50 are attributable to the Illinois action. Therefore, I will reduce OGI's fee request by $49,690.50.

FKC next argues that the fees that OGI incurred in the Illinois action are not reasonable. Specifically, FKC argues that any fees paid to the Reinhart firm to defend the Illinois action were unreasonable because any work performed by the Reinhart firm was necessarily duplicative of the work performed by the Sandberg firm. Before addressing this argument, however, I must point out that FKC wrongly asserts that the question of whether OGI's attorneys' fees were reasonable is a question of Michigan substantive law. Although whether OGI is <u>entitled</u> to costs and reasonable attorneys' fees pursuant to a contractual indemnification provision is a substantive issue controlled by Michigan law, <u>Taco Bell Corp. v. Cont'l Cas. Co.</u>, 388 F.3d 1069, 1077 (7th Cir. 2004), the method of <u>quantifying</u> a reasonable fee is a procedural issue governed by federal law in a diversity suit, <u>id.</u> at 1076. Thus, I analyze FKC's argument under federal law.

The Seventh Circuit has outlined a standard to use when quantifying reasonable attorneys' fees pursuant to a contractual indemnification provision. Under this standard, a district court will not normally engage in a detailed, hour-by-hour review of the lawyers' bills, as it might do when quantifying reasonable attorneys' fees pursuant to a fee-shifting statute. <u>Medcom Holding Co. v. Baxter Travenol Labs., Inc.</u>, 200 F.3d 518, 521 (7th Cir. 1999); <u>see also</u> <u>Taco Bell</u>, 388 F.3d at 1075-76. Rather, the district court asks only the questions posed by the parties' agreement: "did the legal expenses result from [the] breach

8

and, if so, were the fees reasonable (that is, were they fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves)?" Medcom, 200 F.3d at 521. Courts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it. Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp., 73 F.3d 150, 153 (7th Cir. 1996). Thus, so long as the bills are real bills that the party seeking indemnification actually paid in the ordinary course of business without knowing for certain that it would be able to shift fees to its adversary, the district court should find that the bills are commercially reasonable. Id.; see also Anderson v. Griffin, 397 F.3d 515, 522 (7th Cir. 2005); Taco Bell, 388 F.3d at 1075-76; Kallman v. Radioshack Corp., 315 F.3d 731, 742 (7th Cir. 2002); Medcom, 200 F.3d at 520-21.

In the present case, FKC concedes that the fees billed by the Sandberg firm are reasonable, but it argues that any fees billed by the Reinhart firm for work on the defense of the Illinois action are unreasonable because Reinhart's work was necessarily duplicative of the work performed by the Sandberg firm. However, as OGI points out, it is not uncommon for companies to hire more than one law firm to defend them in litigation. Here, OGI was exposed to over $10 million in liability, and thus hiring two firms to defend such a large claim was not patently unreasonable. Further, just because the two firms may have performed similar tasks does not mean that their work was duplicative. The firms could have divided the tasks into sub-tasks and then distributed the sub-tasks between them.[1]

---

[1] In its brief, FKC does not cite any line items in the bills that it believes are duplicative, making it difficult for me to evaluate FKC's claim that the firms were performing the exact same work. Instead, FKC tells the court to review the bills for itself, apparently hoping that I will find that the bills are obviously duplicative. (Docket Entry #71, at pp. 8-9.) However, the bills comprise a stack of paper over an inch thick. I have briefly looked through this stack and found nothing that is obviously duplicative.

9

In any event, because OGI actually paid the fees of each firm at a time when its ability to shift fees to FKC was uncertain, the fees are entitled to a presumption of reasonableness. Medcom, 200 F.3d at 521.[2] FKC has not rebutted this presumption. Moreover, having rejected OGI's tender of the defense of the Illinois action, FKC is in no position to complain that OGI did not manage its own defense as efficiently as FKC would have. Taco Bell, 388 F.3d at 1076-77.

Finally, I note that the total cost of OGI's defense of the Illinois action (including fees for expert witnesses and all other litigation expenses) was $307,863.17.[3] This does not strike the court as an unreasonably extravagant defense for a $10 million claim. Therefore, I find that all of the fees that FKC concedes were billed by the Reinhart firm to defend OGI in the Illinois action are reasonable. Judgment will be entered in favor of OGI and against FKC in the amount of $307,863.17.

---

[2] I note that this case is slightly different than Medcom and related cases because the fees of the Sandberg firm were paid by OGI's insurer, and the fees of the Reinhart firm were paid by OGI itself. Thus, two different entities were scrutinizing the bills, and this may have made it harder to detect any overlap in the work being done by each firm. However, OGI was ultimately responsible for paying Reinhart's fees (i.e., the allegedly unreasonable fees), and it knew that its insurer had already hired a firm to defend it in the Illinois action. OGI therefore had every incentive to make sure that Reinhart did not duplicate the work of the Sandberg firm, since it would not have wanted to waste money paying Reinhart to do what OGI's insurer was already paying the Sandberg firm to do. Accordingly, Medcom's presumption of reasonableness still applies.

[3] I arrived at this number using the breakdown of fees contained on page 13, n.4 of the Reply Brief in Support of OGI's Damages Claim (Docket Entry #64), filed on September 19, 2008. The total of all fees and costs reported there (and substantiated by affidavits) was $357,553.67. I then subtracted $49,690.50 – i.e., the amount that FKC contends was attributable to OGI's prosecution of the present action – from the total to arrive at the cost of the defense of the Illinois action.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the clerk enter judgment in favor of OGI and against FKC in the amount of $307,863.17.  This file shall be closed.

Dated at Milwaukee, Wisconsin, this 9 day of February, 2009.

/s_____
LYNN ADELMAN
District Judge